```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
───────────────────────────────────────
ARTURO MOREIRA,
                                        13 Civ. 4850 (JGK)
                Plaintiff,
                                        MEMORANDUM OPINION AND
     - against -                        ORDER

CAROLYN W. COLVIN, Acting
Commissioner of Social Security

                Defendant.
───────────────────────────────────────
```

**JOHN G. KOELTL, District Judge:**

    The plaintiff, Arturo Moreira, brought this action to seek review of a final decision of the defendant, the Commissioner of Social Security (the "Commissioner"), that the plaintiff was not entitled to Disability Insurance Benefits ("DIB") and Social Security Income ("SSI"). The plaintiff filed applications for DIB and SSI on April 8, 2011, alleging that he became unable to work on April 1, 2009. The plaintiff complained of meniscal tears in both knees and back pain. (Tr. 221.) His claims were initially denied on June 24, 2011. He filed a written request for a hearing on July 1, 2011. The Administrative Law Judge ("ALJ") held a hearing on October 25, 2011, and denied the plaintiff's claims on October 31, 2011. After the Appeals Council declined review on June 21, 2013, the decision of the ALJ became the final decision of the Commissioner.

The parties have filed cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

## I.

The administrative record contains the following facts.

The plaintiff, born December 8, 1966 and aged 42 at the time he sustained the alleged disability, worked as a factory worker, electrician, and clothing pattern inspector.  (Tr. 197, 228.)  He worked as a pattern inspector from 1999 until 2008, when he was laid off.  (Tr. 35, 56, 202.)

The plaintiff's knee problems began with arthroscopic knee surgery on his right knee due to meniscal tears after a fall in 2003.  (Tr. 268-69, 271-73.)  An X-ray of the left knee on December 6, 2010 revealed minimal narrowing of the medial tibiofemoral joint compartment. (Tr. 338-39.)  An MRI of the left knee on March 8, 2011 revealed a complex tear of the body of the medial meniscus.  (Tr. 277-78.)  On March 9, 2011, the plaintiff visited Dr. Mark Silverman at St. Barnabas Hospital; Dr. Silverman evaluated the plaintiff's left knee and the MRI.  (Tr. 337-38.)  Dr. Silverman noted the plaintiff's difficulty in walking and running and diagnosed a left knee medial meniscus tear; Dr. Silverman then recommended arthroscopic surgery on the plaintiff's left knee.  (Tr. 337-38.)

On March 24, 2011, Dr. Manuel Erroa, the plaintiff's primary care physician, examined the plaintiff and found chronic sinusitis and fatty liver disease from alcohol abuse. (Tr. 283.) On March 31, 2011, Dr. Silverman performed arthroscopic knee surgery on the plaintiff's left knee, with a partial medial menisectomy and a major synovectomy. (Tr. 290-91.) Following the surgery, the plaintiff was required to undergo eight weeks of physical therapy. (Tr. 307.) Treatment records available to the ALJ showed that the plaintiff attended weekly physical therapy from at least April 06, 2011 to August 2, 2011, and again from September 19, 2011 to October 12, 2011. (Tr. 308-25, 348-57, 361.)

The plaintiff filed applications for SSI and DIB on April 8, 2011, alleging that he became unable to work on April 1, 2009. (Tr. 66-67, 175-76, 177-85.) A wellness report dated June 1, 2011 from Dr. Silverman (signed by Dr. Adeleke) noted pain and tenderness in the left knee and recommended six more weeks of physical therapy: the report stated that the plaintiff would be temporarily unemployable for two months. (Tr. 321-22.) In the space on the form for identifying limitations or explanations, it was noted that the plaintiff was receiving "physical therapy to strengthen the knee and improve the range of motion." (Tr. 321-22.)

On June 10, 2011, Dr. Vinod Thukral performed a consultative internal medicine examination at the request of the Commissioner. (Tr. 293-96.) He noted normal gait with or without a cane,

3

ambulation without assistance during examination, normal range of motion in all joints bilaterally, and strength of 5/5 in the upper and lower extremities.  (Tr. 294-295.)  Based on this examination Dr. Thukral concluded that the plaintiff was capable of lifting 50 pounds occasionally, carrying 25 pounds frequently, walking six to eight hours a day, pushing, pulling, sitting, standing, "or any other such related activities," without limitation other than a moderate limitation on squatting and a need to avoid environmental irritants due to asthma.  (Tr. 296, 298, 300.)

On July 27, 2011, the plaintiff returned to Dr. Silverman complaining of pain in his left knee and back and requesting more physical therapy for his knee.  (Tr. 341-45.)  The report from the visit noted abnormal range of motion, tenderness, and pain on palpation, and Dr. Silverman prescribed six more weeks of physical therapy and a follow-up in six weeks.  (Tr. 341-42.)  An orthopedic note from the St. Barnabas Hospital Orthopedic Clinic dated August 10, 2011, indicates that disability papers were filled out with a prospective return to work date of September 19, 2011.  (Tr. 378.)  The plaintiff subsequently returned to the clinic on September 7, 2011, stating that he had insurance issues with the physical therapy, but requesting more therapy, and noting continued back pain.  (Tr. 343.)  The report from the visit noted abnormal range of motion secondary to pain in the left knee, and, in addition to repeating earlier findings, obvious crepitus.  (Tr. 343.)  Dr. Silverman again ordered continued physical therapy for

4

six weeks to strengthen the range of motion and modalities, a prescription of Mobic for pain and a follow up in twelve weeks. (Tr. 343, 345.)  A lumbar X-ray on September 12, 2011 suggested no significant findings.  (Tr. 346.)

On October 21, 2011, Dr. Regina Gurerich examined the plaintiff and assessed his residual functional capacity ("RFC"). (Tr. 372-73.)[1]  She diagnosed him with bilateral knee internal derangement and lumbar IVD syndrome with neuropathy, following left knee arthroscopy, and stated that his prognosis was poor. (Tr. 370-73.)  With respect to the plaintiff's RFC, Dr. Gurerich concluded that the plaintiff could not sit or stand for more than an hour a day, could not carry or lift over five pounds, and needed assistance ambulating.  (Tr. 372-73.)  She also concluded that he had marked limitations in grasping, manipulating, and reaching objects and could not push, pull, kneel, bend, and stoop, and that these limitations might have begun as early as 2008. (Tr. 373-74, 377.)

After the plaintiff's claims were initially denied on June 24, 2011, he filed a request for hearing on July 1, 2011, and a hearing was held on October 25, 2011 before the ALJ.  (Tr. 30.) The plaintiff appeared with his attorney and with the aid of a Spanish interpreter.  (Tr. 47.)  The plaintiff testified that he

---

[1] Residual functional capacity is an assessment of an individual's ability, despite the individual's impairment, to meet physical, mental, sensory and other demands of jobs based on all relevant evidence. 20 C.F.R. § 416.945; see also Villanueva v. Barnhart, No. 03cv9021, 2005 WL 22846, at *6 n.7 (S.D.N.Y. Jan. 5, 2005).

was single, living alone, and depended on his sister for most meals, cleaning, and grocery shopping. (Tr. 50, 54.) He stated that, despite having looked for work until his second operation, he had not worked since being terminated in April 2008. (Tr. 50, 56.) He also stated that he had recently seen Dr. Silverman, his primary physician Dr. Erroa, a physical therapist, as well as a general practitioner. (Tr. 56-57.) At the hearing, the ALJ asked the plaintiff's attorney whether there were any additional documents to be submitted at the time, and the attorney represented that there were not. (Tr. 63.)

On October 31, 2011 the ALJ issued his decision denying the benefits. (Tr. 30.) The ALJ found that the plaintiff did not currently engage in substantial gainful activity. (Tr. 32.) The ALJ further found, based on the plaintiff's impairments with respect to his knees, liver, back, and asthma, that the plaintiff had "severe impairments" which limited his mental or physical ability to do basic work activities. (Tr. 32.) However, the ALJ found that these impairments were not the same as or equal to any listed impairment entitling the plaintiff to the benefits. (Tr. 32-33.)

With respect to the plaintiff's RFC, the ALJ concluded that the plaintiff had the capacity to perform "sedentary work" with nonexertional limitations of 1) "only occasional stooping and crouching" and 2) a need for avoidance of "concentrated exposure to irritants such as dust and smoke." (Tr. 33-34.) The ALJ

mentioned Dr. Silverman's treatment of the plaintiff, the plaintiff's statement that he recently completed physical therapy, and Dr. Erroa's opinion on the plaintiff's liver issues; however, the ALJ discounted the credibility of Dr. Gurerich's RFC assessment, and assigned great weight to the RFC assessment of Dr. Thukral. (Tr. 34-35.) The ALJ found that the plaintiff's subjective reports of impairments were not entirely credible, noting especially that the plaintiff did not appear to need a cane to ambulate at the hearing. (Tr. 35.)

The ALJ then found that the plaintiff could perform his past relevant work and therefore was not disabled. (Tr. 35.) The ALJ further found that the plaintiff was not disabled because his nonexertional limitations did not significantly limit the scope of "sedentary work" available. (Tr. 36-37.) The ALJ, relying on the medical vocational guidelines ("the grids"), found that work that the plaintiff was capable of performing existed in significant numbers in the national economy. (Tr. 36-37.)

The ALJ thus found that the plaintiff was not disabled within the meaning of the Social Security Act and denied both the DIB claim and the SSI claim. (Tr. 37.) The plaintiff appealed to the Appeals Council and submitted several new pieces of evidence including medical records showing that he had undergone additional treatment after he submitted his application. (Tr. 378-429.) Those records included evidence of physical therapy treatments as late as May, 2012. (Tr. 409.) The records also included

7

additional wellness reports from Dr. Silverman including a report dated April 3, 2012, which noted that the plaintiff was temporarily unemployable due to lower back pain and problems with his knee.  (Tr. 419.)  The Appeals Council declined review of the plaintiff's claims, noting that the additional evidence mostly addressed the time period after the ALJ's decision on October 31, 2011.  (Tr. 2.)  The ALJ's determination became final, and the appeal to this Court ensued.

## II.

A court may set aside a determination by the Commissioner only if it is based on legal error or is not supported by substantial evidence in the record.  See 42 U.S.C. § 405(g); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (citations omitted).  Substantial evidence is "more than a mere scintilla"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v NLRB, 305 U.S. 197, 229 (1938)) (internal quotation marks omitted); see also Diaz v. Shalala, 59 F.3d 307, 312 (2d Cir. 1995); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991).

The definition of "disabled" is the same for DIB and SSI.  See Barnhart v. Walton, 535 U.S. 212, 214 (2002).  A claimant seeking DIB or SSI is considered disabled if the claimant is unable "to engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); accord 42 U.S.C. § 1382c(3)(A).

The analytical framework for evaluating claims of disability for DIB and SSI is defined by regulations of the Commissioner as a five-step inquiry:

1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.
2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits the claimant's mental or physical ability to do basic work activities.
3. If the claimant has a "severe impairment," the Commissioner must determine, based solely on medical evidence, whether the claimant has an impairment listed in Appendix 1 of the regulations. If so, the Commissioner will consider the claimant disabled, without considering the vocational factors of age, education, and work experience.
4. If the impairment is not listed in the regulations but is determined to be a severe impairment, the Commissioner will determine the claimant's RFC and, based on that determination, ask whether, despite the claimant's severe impairment, the claimant can perform the claimant's past work.

> 5. If the claimant is unable to perform such past work, the Commissioner then determines whether there is other work which the claimant could perform.

See 20 C.F.R. §§ 404.1520(a), 416.920(a); see also Shaw v. Chater, 221 F.3d 126, 132 (2d Cir. 2000).

When employing this five step process, the Commissioner must consider four factors in determining a claimant's entitlement to benefits: "(1) the objective medical facts; (2) diagnoses of medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; [and] (4) the claimant's educational background, age and work experience." Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (internal quotation marks and citation omitted).

The claimant bears the initial burden of proving that the claimant is disabled within the meaning of the Social Security Act. See Shaw, 221 F.3d at 132. If the claimant satisfies the burden of proof through the fourth step, the claimant has established a prima facie case and the burden of proof shifts to the Commissioner at the fifth step. Id.

**III.**

However, before considering whether the ALJ's conclusions are supported by substantial evidence, the Court must first be satisfied that the claimant has had a full and fair hearing under the Social Security Act. Echevarria v. Sec'y of Health & Human

Servs., 685 F.2d 751, 755 (2d Cir. 1982). The Act must be liberally applied because it is a remedial statute intended to include rather than exclude. Dixon v. Shalala, 54 F.3d 1019, 1028 (2d Cir. 1995).

In a proceeding to determine whether a claimant is disabled, the ALJ has an affirmative duty to develop the administrative record. Echevarria, 685 F.2d at 755 (citations omitted); see also Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999) ("[W]here there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history."). "This duty arises from the Commissioner's regulatory obligations to develop a complete medical record before making a disability determination, and exists even when . . . the claimant is represented by counsel." Avila v. Astrue, 933 F. Supp. 2d 640, 653-54 (S.D.N.Y. 2013) (quoting Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996)).

In particular, with respect to the treating physician records, the governing statute provides that the Commissioner "shall make every reasonable effort to obtain from the individual's treating physician (or other treating health care provider) all medical evidence, including diagnostic tests, necessary in order to properly make" the disability determination before evaluating medical evidence obtained from any other source on a consultative basis. 42 U.S.C. § 423(d)(5)(B); see 42 U.S.C. § 1382C(3)(H)(i); see also Rosa, 168 F.3d at 79-80 (holding that the ALJ erred in failing to satisfy his duty in a DIB case to

develop the record where he did not obtain further treatment records from a treating physician and other treatment sources including a physical therapist and orthopedist, before relying on the opinion of consulting physicians); Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998) (concluding that there was a serious question as to whether the ALJ satisfied his duty to develop the record in an SSI case); Torres v. Comm'r of Soc. Sec., No. 13cv730, 2014 WL 406933, at *4-5 (S.D.N.Y. Feb. 3, 2014) (holding that the ALJ failed to develop the record where he failed to follow up after asking for treatment notes and functional analysis from an identified primary treating physician).

The plaintiff contends that the ALJ committed legal error before reaching the five step analysis because the ALJ failed to develop the record as required. Specifically, the plaintiff argues that the ALJ did not obtain records, reports, and RFC evaluations from the plaintiff's treating physicians.[1]

---

[1] In this case, much of the evidence that the ALJ allegedly failed to obtain pertained to treatment and physical therapy occurring between filing of the application on April 8, 2011 and the ALJ's decision on October 31, 2011. The duty to develop medical records normally extends only to obtaining medical history for at least the twelve months preceding the month of application. 20 C.F.R. §§ 404.1512(d), 416.912(d). Whether the ALJ has a duty to develop the record with respect to treating sources after the date of filing is not settled and may depend on the facts of the case. Compare Brown v. Comm'r of Soc. Sec., 709 F. Supp. 2d 248, 257 (S.D.N.Y. 2010) ("[T]he duty to develop the record extends only with respect to the 12-month period prior to the filing date of the claimant's application for benefits." (citations and internal quotation marks omitted)), with Pettey v. Astrue, 582 F.Supp.2d 434, 437 (W.D.N.Y. 2008) (holding that the ALJ's failure to develop the record for the period that elapsed between the

The plaintiff identified Dr. Silverman as a major treating source within the twelve months before the plaintiff filed his application. (Tr. 56-57.) Dr. Silverman operated on the plaintiff's impaired left knee and ordered physical therapy several times. (Tr. 56, 290-91, 341-43.) Even though the wellness report from Dr. Silverman indicated limited range of motion, the report did not elaborate on this finding's impact on the plaintiff's ability to work, where such information could have been material to determining the plaintiff's RFC and limitations. (Tr. 321-22.) The plaintiff also identified Dr. Erroa as his

---

plaintiff's application and hearing date constituted legal error). As explained more fully below, the facts of this case support applying the affirmative duty to the period after the submission of the application, particularly because the plaintiff had surgery in the month immediately preceding the application, and because the plaintiff underwent ongoing physical therapy and other treatments after the plaintiff submitted his application. (Tr. 34-35.) Moreover, the ALJ relied heavily on a consultative physician's report that was based on an examination on June 10, 2011 and was post-application evidence. (Tr. 34.) This further supports the need to obtain treating physicians' evaluations from the same period of time that would shed light on the condition of the plaintiff at the time. See Scott v. Astrue, No. 09cv3999, 2010 WL 2736879, at *14 n.60 (E.D.N.Y. July 9, 2010) ("In this particular circumstance, the court believes the more appropriate rule is the one adopted in Pettey[, 582 F. Supp. 2d 434]. Given that the ALJ already had knowledge of plaintiff's changed condition between the time of his application and time of his hearing, the ALJ should have but did not seek further clarification from [the treating physician], whose wellness report was already in the administrative record."); cf. Lisa v. Sec'y of the Dep't of Health & Human Servs., 940 F.2d 40, 44 (2d Cir. 1991) ("[W]hen . . . a diagnosis emerges after the close of administrative proceedings that sheds considerable new light on the seriousness of a claimant's condition, evidence of that diagnosis is material and justifies remand.") (citations and internal quotation marks omitted)).

13

primary treating physician and also supplied several notes from his physical therapist; there are several pieces of records of treatment from these sources without any evaluations, analyses, or detailed opinions. (Tr. 56, 283-84, 290-92, 308-25, 337-38, 348-51, 361.)

The records from the treating sources also appear to be inconsistent with the consultative exam on which the ALJ relied. Dr. Silverman completed a wellness report on July 1, 2011, that noted pain and tenderness in the left knee and recommended six more weeks of physical therapy to strengthen the knee and improve range of motion. He also found the plaintiff to be unemployable for two months. (Tr. 321-22.) But ten days later, the consultative examiner found normal range of motion and no substantial restriction on any exertional activities. (Tr. 296, 298, 300.) This conclusion from the consultative examiner also appeared to be inconsistent with the subsequent months of physical therapy treatments and subsequent reports by Dr. Silverman that found limited motion or range of motion. (Tr. 341-45.) While there are indications in the record that the plaintiff received physical therapy over a long period of time, the record does not contain the actual physical therapy treatment notes which should have indicated the plaintiff's progress or lack of progress on criteria such as range of motion.

Faced with ambiguities, inconsistencies, or gaps in a treating physician's reports, the ALJ had "an affirmative duty to

14

seek out more information from the treating physician and to develop the administrative record accordingly." Hartnett v. Apfel, 21 F. Supp. 2d 217, 221 (E.D.N.Y. 1998) (citations omitted); see also Rosa, 168 F.3d at 79-80 (holding that the ALJ erred by failing to seek out more records from treating physician, physical therapist and hospital in light of contradictions between evidence on the record and the scarce one page report of the primary treating physician); Scott v. Astrue, No. 09cv3999, 2010 WL 2736879, at *15 (E.D.N.Y. July 9, 2010)("By foregoing the opportunity to inquire further upon [the treating physician's] 2008 wellness report to clarify the admittedly ambiguous opinion and by rejecting [treating physician's] opinion without fully developing the factual record, the ALJ committed legal error.").

Moreover, additional evidence surrounding the plaintiff's continued physical therapy may also have been relevant to determining the plaintiff's medical conditions.  Dr. Silverman's June 1, 2011 wellness report indicated that the plaintiff was temporarily unemployable for two months but did not explain the basis for such a conclusion; nor did the report detail the plaintiff's work-related limitations in the space provided.  (Tr. 321.)  However, the report also stated that six weeks of therapy was required to improve range of motion.  (Tr. 321.)  Indeed, even though the June 1, 2011 wellness report projected only two months for which the plaintiff would be unemployable, (Tr. 321), Dr. Silverman ordered an additional six weeks of physical therapy on

July 27, 2011, and again on September 7, 2011, (Tr. 342, 343, 345). It appears that the plaintiff initially had insurance problems with these prescribed sessions of physical therapy, (Tr. 343), but did undergo additional physical therapy sessions at least six times from September 19 to October 12, 2011, (Tr. 353-57, 361), shortly before the ALJ's hearing on October 25, 2011. There is no record explaining why Dr. Silverman thought that the plaintiff was unemployable for only two months, but continued to prescribe physical therapy for months thereafter.[2] In any event, the wellness report from and the subsequent evaluations by the treating sources are facially ambiguous and inconsistent. Accordingly, the ALJ was obligated to obtain additional information from the treating physicians, see Rosa, 168 F.3d at 79-80, before relying heavily on the evaluation of a consultative physician who did not treat the plaintiff and whose opinion is

---

[2] In addition, evidence submitted to the Appeals Council indicates that the plaintiff underwent physical therapy again from November 2011 to early 2012. (Tr. 384-92.) Although this latest group of physical therapy records covers the period after the ALJ's decision, these records do, like the earlier physical therapy records, raise questions as to whether the June 1, 2011 wellness report underestimated the seriousness of the plaintiff's condition by stating that he would be unemployable for only two months. Indeed, Dr. Silverman's last wellness report from the period dated April 4, 2012, indicated that the plaintiff was still temporarily unemployable as a result of his back pain and left knee problems. (Tr. 419.) This evidence may support the conclusion that, at least following the plaintiff's March 31, 2011 surgery on his left knee, the plaintiff was continually disabled for over a year. The records submitted to the Appeals Council after the ALJ's October 31, 2011 decision were thus strongly supportive of the plaintiff's claim of disability. The evidence was new, material, and could not have been submitted prior to the ALJ's decision. See Perez v. Chater, 77 F.3d 41, 45 (2d Cir. 1996).

thus entitled to less weight.  See Lazo-Espinoza v. Astrue, No. 10cv2089, 2012 WL 1031417, at *11 (E.D.N.Y. Mar. 27, 2012); Peed v. Sullivan, 778 F. Supp. 1241, 1247 (E.D.N.Y. 1991) ("[T]he duty to develop a full record and the treating physician rule . . . do not operate independently of each other. . . .").

Because of these deficiencies in the record, it is also unclear whether detailed assessments by the plaintiff's treating physicians, including Dr. Silverman and the physical therapist, if obtained by the ALJ, would have altered the ALJ's conclusion that the plaintiff was able to perform sedentary work.  At the hearing, the plaintiff stated that he could stand for no more than 25 minutes at a time and sit for no more than 20-25 minutes at a time.  (Tr. 60.)  It is possible that this testimony may have been substantiated by evaluations from the plaintiff's treating physicians, had they been asked to explain their diagnoses and opinions.  Thus, the additional evidence would have been important to a proper RFC determination by the ALJ.

However, aside from a general inquiry to the plaintiff's attorney at the administrative hearing, the ALJ did not make further inquiries or contact the treating physicians in order to ascertain the treating physicians' opinions and analyses with respect to the plaintiff's precise medical conditions and failed to obtain the treatment records from the physical therapy treatments.  The ALJ failed to obtain this additional information even though the ALJ had the contact information for these treating

physicians.  The ALJ's failure to make at least reasonable efforts to obtain those records and reconcile any ambiguities was legal error.  See Rosa, 168 F.3d at 80 (holding that failure to close the gaps in the record constituted legal error); Taveras v. Apfel, No. 97cv5369, 1998 WL 557587, at *4-5 (S.D.N.Y. Sept. 2, 1998).

The Commissioner relies on the decision of the Court of Appeals for the Second Circuit in Tankisi v. Comm'r of Soc. Sec., 521 F. App'x 29 (2d Cir. 2013) (summary order).  In Tankisi, the Court of Appeals held that while the ALJ erred in failing to obtain a medical source statement from the treating physician as to whether the plaintiff could meet the physical demands of work, that did not require remand where the "record contains sufficient evidence from which an ALJ can assess the petitioner's residual functioning capacity."  Id. at 34.  In that case, the Court of Appeals found that there was sufficient evidence to support the ALJ's conclusion based on the "quite extensive" medical record. Id.  In this case, the medical record contains gaps and inconsistencies which have not been resolved.  While the Commissioner relies heavily on the consultative examiner's report by Dr. Thukral, that appears to be inconsistent with Dr. Silverman's conclusions at about the same time.  And while the Commissioner relies on some of Dr. Silverman's estimates as to when the plaintiff could return to work, these conclusions were overtaken by continuing findings that the plaintiff was not able

18

to return to work and by extensive subsequent periods of physical therapy that stretched over a year.

## IV.

Because the ALJ failed to satisfy his affirmative duty to develop the record, the appropriate disposition in this case is a remand to the Commissioner for further proceedings.  The Court therefore does not reach the question whether the Commissioner's determination is supported by substantial evidence.  See Johnson v. Bowen, 817 F.2d 983, 987 (2d Cir. 1987); Taveras, 1998 WL 557587, at *4-*5.

## CONCLUSION

The Court has considered all of the arguments of the parties. To the extent not specifically addressed above, the remaining arguments are either moot or without merit.  For the reasons explained above, the plaintiff's cross-motion for judgment on the pleadings is **granted**, and the defendant's cross-motion is **denied**. The Commissioner's decision is **vacated** and this case is **remanded to the Commissioner** for further proceedings in accordance with this opinion.  **The Clerk is directed to enter judgment and to close this case.**
**SO ORDERED.**

**Dated:     New York, New York
            September 15, 2014**                  /s/
                                            John G. Koeltl
                                       **United States District Judge**